**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

_____

| | |
|---|---|
| **PPI, INC.** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| *v.* | )      **Civ. No. 4:08cv248-SPM/WCS** |
| | ) |
| **DIRK KEMPTHORNE, et al.,** | ) |
| | ) |
| *Defendants.* | ) |

_____)

**FEDERAL DEFENDANTS' MEMORANDUM IN  OPPOSITION TO PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff, PPI, Inc. ("Plaintiff") filed a complaint and motion for preliminary injunction

on June 3, 2008, seeking declaratory and injunctive relief against Dirk Kempthorne, United

States Secretary of the Interior, and George Skibine, United States Assistant Secretary of the

Interior (collectively the "Federal Defendants") in relation to a gaming compact entered into

between the Seminole Tribe of Florida and the State of Florida.  Federal Defendants respectfully

request that this Court deny Plaintiff's motion for a preliminary injunction because Plaintiff fails

to show any likelihood of success on the merits, any irreparable harm, and the balance of harms

and the public interest strongly favor a denial.

## INTRODUCTION

Plaintiff seeks to enjoin that which cannot be enjoined, the Secretary's implementation or enforcement of certain compact provisions entered into between the State of Florida and the Seminole Tribe of Florida.  The Secretary does not and cannot implement or enforce the Compact.  Pursuant to the Indian Gaming Regulatory Act ("IGRA"), the Secretary is required to publish notice in the Federal Register upon the completion of a 45 day period after submission of a compact.  This requirement is directed by Congress and the Secretary has no discretion in the matter.  Once the Secretary has performed his ministerial duty to publish notice of a compact in the Federal Register, the Secretary has no further actions that he may take.  Rather, the legal framework as directed by Congress is already in place.  The Secretary took no action reviewable under the APA.  Whether and if the Secretary is to act within the 45 day period allowed for consideration is wholly committed to agency discretion.  If the Secretary does not act to either approve or disapprove a compact, Congress has directed that the compact is approved only to the extent it is consistent with IGRA.  After the passage of that time, the Secretary has no authority to take any other action that would affect the status of the compact.  Therefore, there can be no APA challenge to the Secretary's nonaction in approving or disapproving the Compact.

Furthermore, Plaintiff fails to join the Seminole Tribe of Florida and the State of Florida, both parties to the Compact.  Case law compels the conclusion that the Seminole Tribe of Florida and the State of Florida are indispensable parties to this action.  The two parties to this compact that Plaintiff seeks to undermine are not before the Court.  The Seminole Tribe, not bound by any determinations made in an action to which it is not a party, could well decide the gaming is lawful no matter what adjudication in its absence decides and continue to game.  Absent the

Seminole Tribe, adequate relief cannot be secured.

Nor can Plaintiff establish that it will be irreparably harmed or that the requested injunction will serve the public interest and the balance of harms favors the relief sought. Plaintiff seeks an injunction that will have no impact in the current situation. Under IGRA, the Secretary has no authority to implement or enforce a compact after following his ministerial duties to publish notice in the Federal Register. In fact, Congress has balanced the public interest by articulating the explicit remedy for the Secretary's inaction. It directed publication in the Federal Register, which the Secretary has done. There is no relief that may be granted to Plaintiff and its motion must be denied.

## FACTUAL BACKGROUND

IGRA governs all gaming on Indian lands. 18 U.S.C. §§ 1166-68; 25 U.S.C. §§ 2701, et seq. IGRA *inter alia* authorizes states and Indian tribes to enter into compacts for gaming and divides gaming into three classes.

Class I gaming is regulated exclusively by the tribes and includes social and traditional games. Class II gaming includes bingo and related games, which may be played in a state that permits any such games by any person or organization. Class III gaming, which is regulated by the compacts entered into by states and tribes, includes all other games such as those played in casinos, slot machines, and parimutuel betting.

IGRA requires that compacts be properly entered into and properly submitted to the Secretary for approval. It provides that no Class III gaming activities are lawful unless "conducted in conformance with a Tribal-state compact entered into by the Indian tribe and the State under paragraph (3) that is in effect." 25 U.S.C. § 2710(d)(1)(C). Paragraph (3) states:

(A) Any Indian tribe having jurisdiction over the Indian lands upon which a class III gaming activity is being conducted, or is to be conducted, shall request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal-State compact governing the conduct of gaming activities. Upon receiving such a request, the State shall negotiate with the Indian tribe in good faith to enter into such a compact.

(B) Any State and any Indian tribe may enter into a Tribal-State compact governing gaming activities on the Indian lands of the Indian tribe, but such compact shall take effect only when notice of approval by the Secretary of such compact has been published by the Secretary in the Federal Register.

25 U.S.C. § 2710(d)(3)(A) & (B).

Secretarial approval is governed by 25 U.S.C. § 2710(d)(8) which provides that:

(8)(A) The Secretary is authorized to approve any Tribal-State compact entered into between an Indian tribe and a State governing gaming on Indian lands of such Indian tribe.

(B) The Secretary may disapprove a compact described in subparagraph (A) only if such compact violates--

(I) any provision of this chapter,

(ii) any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands, or

(iii) the trust obligations of the United States to Indians.

(C) If the Secretary does not approve or disapprove a compact described in subparagraph (A) before the date that is 45 days after the date on which the compact is submitted to the Secretary for approval, the compact shall be considered to have been approved by the Secretary, but only to the extent the compact is consistent with the provisions of this chapter.

(D) The Secretary shall publish in the Federal Register notice of any Tribal-State compact that is approved, or considered to have been approved, under this paragraph.

25 U.S.C. § 2710(d)(8).

As Plaintiff has detailed in its motion, this case is one part of a long legal controversy

4

related to Indian gaming in Florida.  On September 17, 1991, asserting that Governor Lawton

Chiles failed to negotiate in "good faith" for a compact that would have allowed the Seminole

Tribe of Florida to conduct a variety of Class III games already allowed in Florida, the Tribe

filed suit in the federal district court for the Southern District of Florida, pursuant to 25 U.S.C. §

2710(d)(7), requesting the relief provided by the judicial remedy provisions of IGRA.  *Seminole

Tribe of Florida v. Florida*, No. 91-6756-CIV- Marcus, September 19, 1991.

The State responded by claiming immunity from suit under the Eleventh Amendment to

the Constitution.  The Tribe challenged that immunity and the district court ruled on June 18,

1992, that Congress had abrogated the State's immunity, a ruling that was overturned by the

Court of Appeals for the Eleventh Circuit in 1994.  *Seminole Tribe of Florida v. Florida*, 11 F.3d

1016 (11th Cir. 1994).  In 1996, the Supreme Court affirmed the Eleventh Circuit's ruling and

held that the Tribe could not sue an unconsenting state under IGRA's judicial remedy provisions.

As a result, the Tribe's suit against the State was dismissed.  *Seminole Tribe of Florida v.

Florida*, 517 U.S. 44 (1996).

In 1996, the State of Florida brought action against the Tribe and its Chairman seeking a

declaration that the Tribe was conducting Class III gaming operations, consisting of electronic or

electromechanical facsimiles of games of chance, not authorized by IGRA.  The Tribe's and

Chairman's motions to dismiss were granted and affirmed on appeal.  *Florida v. Seminole Tribe

of Florida*  181 F.3d 1237(11th Cir. 1999).

The States of Florida and Alabama filed an action in the United States District Court for

the Northern District of Florida in 1999 challenging regulations promulgated by the Secretary

pursuant to IGRA, *State of Florida and State of Alabama v. United States*, Case No. 4:99cv137-

RH/WCS.  These regulations allow the Secretary to authorize gaming activities in the absence of a compact - and in the absence of any determination that a state failed to negotiate for a compact in good faith - if the state has blocked federal litigation by invoking its Eleventh Amendment immunity.  *See*  25 U.S.C. 2710 (d) (7) (vii) and implementing regulations of 25 CFR part 291. Three Indian tribes intervened as defendants in *State of Florida and State of Alabama,* including the Seminole Tribe of Florida.  That action was dismissed on September 7, 2007.

In November 2004, the Florida Constitution was amended to allow slot machines to be operated at pari-mutuel facilities in Broward and Dade Counties in Florida if voters approved them.  Art. X s. 23, Fla. Const. (Permitting slot machines).  On December 8, 2005, the Florida Legislature enacted implementing legislation after voters in Broward County accepted slot machines in Broward, and voters in Dade County rejected them.  Fla. Stat., Ch. 551 (regulating slot machines).  Under the legislation, non-Indian pari-mutuel facilities were authorized by the State to operate 6,000 slot machines in Broward County, the same County in which the Tribe has three Class II facilities currently in operation.

On March 6, 2007, the Tribe filed suit in the United States District Court for the Southern District of Florida against the United States, the Department of the Interior, and Dirk Kempthorne in his capacity as the Secretary of the Interior demanding that the Secretary issue gaming procedures in lieu of a compact under Department regulations.  *Seminole Tribe of Florida v. Kempthorne*, Case No. 07-60317-CIV (S.D. Fla. filed March 6, 2007).

Secretary Kempthorne sent letters to Governor Crist and Seminole Chairman Cypress on June 22, 2007, encouraging the State and the Tribe to enter into an agreement and emphasizing that such an agreement could come either in the form of Procedures or a compact, and gave the

parties 60 days to reach an agreement.

Florida Governor Charlie Crist and Seminole Chairman Mitchell Cypress executed the Seminole Tribe of Florida and State of Florida Gaming Compact on November 14, 2007 (the "Compact"), to authorize the Tribe's conduct of Class III gaming activities in accordance with the IGRA.

By letter to Chairman Cypress dated November 14, 2007, the Department of the Interior's Deputy Assistant Secretary – Policy and Economic Development George Skibine confirmed receipt of the signed Compact and that the Department's 45-day period for review under the IGRA would close on December 28, 2007.

The Department of the Interior and the Tribe on November 15, 2007, filed a joint motion to stay the Procedures case in the Southern District of Florida for 60 days, pending Departmental review of the Compact. The district court granted the stay noting that "if the compact is approved, the reason the instant action was brought disappears."

On November 19, 2007, a Petition filed by Marco Rubio, Speaker of the Florida House of Representatives, challenging Governor Crist's authority to execute the Compact on behalf of the State was filed in the Supreme Court of Florida. Oral argument was heard by the court on January 30, 2008, but the court has yet to render its decision.

On December 20, 2007, Gulfstream Park Racing Association, Inc. ("Gulfstream") filed a complaint for declaratory judgment in the United States District Court for the Northern District of Florida. In addition to filing the complaint, Gulfstream also filed a motion for preliminary injunction and temporary restraining order seeking a declaration that the Compact was invalid and seeking to enjoin the Secretary from publishing notice of the Compact in the Federal

Register.  *Gulfstream Park Racing Assoc., Inc. v. Kempthorne, et al.*, Case No. 4:07cv540-RH-WCS.  On December 28, 2007, Judge Hinkle issued an order denying Gulfstream's request for a temporary restraining order.  In his order, Judge Hinkle denied the motion for temporary restraining order on the basis that Gulfstream failed to establish that irreparable harm would result and for failure to establish a "likelihood of success on the merits on a claim for an injunction that would, as a practical matter, operate principally against a nonparty (the Seminole Tribe of Florida)."  The case was voluntarily dismissed on March 3, 2008, after the government filed its motion to dismiss the complaint.

On December 27, 2007, the Florida Attorney General filed a complaint on behalf of the State of Florida in the United States District Court for the District of Columbia against the United States seeking to enjoin the Compact's publication in the Federal Register.  The Florida Attorney General also filed a motion for temporary restraining order and preliminary injunction.  Oral argument was held on January 4, 2008.  After hearing arguments, Judge Friedman issued an oral ruling denying the motions.  This case was voluntarily dismissed on January 30, 2008.

On December 31, 2007, the Department of the Interior, Bureau of Indian Affairs, sent a Notice of Deemed Approved Tribal - State Class III Gaming Compact to the Federal Register for publication.  On January 7, 2008, the Federal Register published notice of the Compact.

## ARGUMENT

Plaintiff fails to meet the standards for injunctive relief that place the burden upon it to establish: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm in the absence of an injunction; (3) proof that the threatened harm outweighs any damage the injunction may cause to the party opposing it; and (4) that the injunction, if issued, will not be

adverse to the public interest. *Haitian Refugee Ctr. v. Nelson*, 872 F.2d 1555, 1561-62 (11th Cir. 1989), *aff'd* 498 U.S. 479 (1991); *South Dade Land Corp. v. Sullivan*, 853 F. Supp. 404, 405-06 (S.D. Fla. 1993) (citing *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983), *reh'g denied*, 724 F.2d 978 (1984)).   A preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites. *Cafe 207 v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir. 1993); *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 441 (1974).   In determining whether to grant an injunction, the courts have traditionally exercised judicial restraint:

> The grant of a preliminary injunction is the exercise of a very far reaching power never to be indulged in except in a case clearly warranting it.

*Sierra Club v. Hinkel*, 433 F.2d 24, 33 (9th Cir. 1970), *aff'd* 405 U.S. 727 (1972) (quoting *Dymo Indus. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)).   Since Plaintiff's preliminary inunction request is "an extraordinary and drastic remedy," it must not be granted

> unless movant "clearly carries the burden of persuasion" as to the four prerequisites. *Canal Authority v. Callaway*, 489 F.2d 567 (5th Cir. 1974).   "The burden of persuasion in all of the four requirements is at all times upon the plaintiff." *Id*. at 573.

*United States v. Jefferson County*, 720 F.2d at 1519; *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).   There is no question that the Eleventh Circuit requires the establishment of all four prerequisites and this Court must require Plaintiff to show the existence of all the prerequisites. *Sierra Club v. Atlanta Regional Comm.*, 171 F. Supp. 2d 1349, 1356 n.8 (N.D. Ga. 2001).

Here, Plaintiff has no possibility of success on the merits.   First, there is no APA review for the inaction that placed the Compact into effect.   Plaintiff alleges that the Secretary's

publication of the Compact violates the IGRA and the APA, despite that fact that the Secretary is not charged with implementing the Compact in any relevant way.  Second, Plaintiff cannot prevail because under the compelling authority of *Kickapoo Tribe of Kansas v. Babbitt*, 43 F.3d 1491 (D.C. Cir. 1995), the Seminole Tribe of Florida and the State of Florida are indispensable parties to this action seeking declaratory relief to enjoin the implementation and enforcement of certain of the Compact's provisions.

Plaintiff cannot establish irreparable harm based upon the Secretary's previous publication of notice of the Compact.  The Secretary is not charged with the implementation or enforcement of the Compact.  There can be no harm to Plaintiff arising from actions for which the Secretary is not responsible.  The Tribe games at its own risk when it does so with a compact deemed approved to the extent it is lawful.  Furthermore, Plaintiff's claims are speculative. Although Plaintiff alleges that it will lose customers to the Seminole Tribe's casino, these claims are based on conjecture from the results of a limited survey; and on the conjecture that the Tribe would not embark on games based upon an adjudication that is not binding on the Tribe.

The balance of harms and the public interest weigh heavily in favor of denying the injunction request.  The public has an interest in insuring that the laws passed by the legislature are duly followed by the executive branch.  Congress has articulated the explicit remedy for inaction by the Secretary.  In effect, it has already weighed the public interest.  Congress directed publication in the Federal Register, which the Secretary has done.  There is no further action that the Secretary may take.  Plaintiff's motion can grant no real relief and only serves to disrupt the administrative process set forth by Congress and dutifully followed by the Secretary.  On balance, there can be no question that the request for preliminary injunction should be denied.

I.     **PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS.**

To demonstrate a substantial likelihood of success, Plaintiff is "required to present a prima facie case showing a reasonable probability that [it] will ultimately be entitled to the relief sought." *Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1486 (10th Cir. 1993), *cert. denied*, 114 S. Ct. 307 (1993) (citations omitted).  If the movant is unable to establish a likelihood of success on the merits, a court need not consider the remaining conditions prerequisite to injunctive relief.  *Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir.2001).

    A.     **Plaintiff Cannot Secure APA Review for Inaction that Places the Compact Into Effect.**

        1.     **The Statute Provides the Explicit Remedy for Not Taking Official Action and Requires Publication**.

Plaintiff cannot prevail on a claim that the Secretary has taken any unlawful action.  The Secretary has done exactly what the statute required.  Nothing in IGRA requires the Secretary to take action within 45 days.  What is mandatory is that the Secretary publish notice in the Federal Register, if no action is taken within 45 days, that the compact has taken effect to the extent the provisions are lawful under IGRA.  This is a ministerial duty directed by Congress.  The Secretary complied with the plain text of IGRA that requires publication in the Federal Register.

The Secretary is not directed under IGRA to hold off publication until he resolves questions of state law related to the compact.  The Secretary may not hold off publication while a State Supreme Court resolves the lawfulness of games allowed under a compact and a Governor's authority to enter into a compact on those games.  The proposition that the Secretary must await resolution of state law issues by a State Supreme Court was explicitly rejected by Judge Lamberth:

> If the Secretary wanted to hold that Gov. Finney's approval was insufficient to form a compact, he could have done so. However, to do so, he had a statutory obligation to disapprove the compact for a legally valid reason under § 2710(d)(8)(B) within forty-five days of the submission of the compact. **In short, the statute does not allow for tolling due to uncertainty within the Department of Interior. FN12.** Therefore, the Secretary's determination that the forty-five day approval period was tolled until the Supreme Court of Kansas handed down its ruling in Finney is contrary to unambiguous law and deserving of no discretion from the court.FN13

(Emphasis added).  *Kickapoo Tribe of Indians v. Babbitt*  827 F. Supp. 37, 44 (D.D.C. 1993),

*rev'd on other grounds*, 43 F. 3d 1491 (D.C. Cir. 1995) (Circuit Court held absent party to

Tribal-State compact indispensable).

IGRA contains a specific provision related to the time in which the Secretary has the

authority to approve or disapprove a compact.  If a compact is not approved within 45 days, the

compact is deemed approved to the extent it is consistent with IGRA.  25 U.S.C. §

2710(d)(8)(C).

> The IGRA explicitly grants Defendants discretion to do one of three things when asked to review a tribal-state compact.  Defendants may approve the compact; disapprove the compact; or take no action with respect to the compact.  25 U.S.C. § 2710(d)(8).  If the last option occurs, the compact is deemed to be approved, but only to the extent it is consistent with the provisions of the IGRA.  *Id.*

*Pueblo of Pojoaque v. Norton*, Civ. 03- 713 BB/LFG, slip op dated February 10, 2004 at 8 (See

Exhibit A); *Kickapoo Tribe,* 827 F. Supp. at 46.

The Secretary is directed by the statute to publish in the Federal Register every notice of

any "Tribal-State compact that is approved or considered to have been approved."  25 U.S.C. §

2710(d)(8)(D).  IGRA gives authority to the Secretary to approve a compact.  Specifically:

> The Secretary is authorized to approve any Tribal-State compact entered into between an Indian tribe and a State governing gaming on Indian lands of such Indian tribe.

25 U.S.C. § 2710(d)(8)(A) (emphasis added).  "The Secretary <u>may</u> disapprove a compact described in subparagraph (A)" only if such compact violates -

> (I)  any provision of this Act,
>
> (ii)  any other provision of federal law that does not relate to jurisdiction over gaming on Indian lands, or,
> (iii)  the trust obligations of the United States to Indians.

25 U.S.C. § 2710(d)(8)(B) (emphasis added).

The statute gives the Secretary only 45 days to decide whether to approve or to disapprove.  The statute provides a very specific remedy if the Secretary does not act within that time period.  As contrasted with the "may" language used to allow the Secretary to disapprove a compact, if the Secretary does not act within 45 days, "the compact <u>shall</u> be considered to have been approved by the Secretary."  25 U.S.C. § 2710 (d)(8)(C) (emphasis added).  The statute again provides mandatory language that: "The Secretary shall publish in the Federal Register notice of any Tribal-State compact that is approved, or considered to have been approved, under this paragraph."  25 U.S.C. § 2710 (d)(8)(D).

It is clear that Congress did not mandate that the Secretary disapprove a compact for every defect the Secretary might find.  Instead, Congress gave the Secretary the authority to approve and the permissive right to disapprove.  It cannot be doubted that Congress expressly gave the remedy for inaction by the Secretary under this provision of the statute.   If the Secretary does not act within 45 days, for whatever reason, "the compact shall be considered to have been approved by the Secretary, but only to the extent the compact is consistent with the provisions of this chapter."  25 U.S.C. § 2710 (d)(8)(C); *see also Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 327 F. Supp. 2d 995, 999 (W.D. Wis. 2004) ("The questions of unreasonable delay and recalcitrance do not arise because Congress anticipated

them in writing the statute.").

But where Congress has statutorily addressed the result of the inaction, no separate declaratory judgment remedy, or even an APA remedy can be available. "As [the Supreme Court] stated in *Transamerica Mortgage Advisors, supra*, 'it is an elemental canon of statutory construction that where a statute provides a particular remedy or remedies, a court must be chary of reading others into it.'" 444 U.S. at 19; *see also Touche Ross & Co. v. Redington*, 442 U.S. 560, 571-4 (1979). "In the absence of strong indicia of a contrary Congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." *Middlesex County Sewerage Auth. v. Sea Clammers*, 453 U.S. 1, 14-15 (1981). "When Congress says expressly that it wants amendments not approved within 45 days to be deemed approved, it had provided a remedy and left nothing for a court to review." *Lac Du Flambeau*, 327 F. Supp. 2d at 999.

Here, any direction to not publish despite inaction runs contrary to the statute. After the 45-day period, the Secretary's actions are specifically directed by the statute. If the Secretary does not act within the 45 days, and any inconsistency with IGRA, including a deficiency in the authority of the Governor – the deficiency in a party to the compact, renders provisions addressing the authority of the deemed not approved as a matter of law. The status of the compact is defined and limited by statute after inaction for any reason. The Secretary is to publish the notice of approval in the Federal Register and the Compact "shall take effect." 25 U.S.C. §§ 2710 (d)(3)(B) and 2710 (d)(7)(c). "Congress imposed an absolute forty-five day deadline" after which it is deemed approved even if the compact or provisions are legally invalid. *Kickapoo Tribe*, 827 F. Supp. at 43, 44. As Judge Lamberth noted:

The omission of any type of tolling provision is certainly not an oversight on the part of Congress.  By including the forty-five day limitation, Congress clearly was attempting to ensure that the Secretary would not be able to delay approval of Tribal-State compacts indefinitely, thus frustrating Congress' intent with IGRA.  (Congress has all too often seen its goals left unobtained due to dilatory action on behalf of individuals in the executive branch.)  If the Secretary was allowed to postpone action every time there was uncertainty as to some issue in IGRA or in a compact, the Secretary would be able to forestall approval of compacts indefinitely.  Rather than allow this, Congress imposed an absolute forty-five day deadline, a deadline defendants failed to meet in this case.

*Kickapoo Tribe*, 827 F. Supp. at 44 n. 12.

> **2.     Because the Secretary Took No Official Action, No Final Agency Action Was Taken on the Legality of the Compact or Authority of the Governor to Agree to a Compact.**

The statute makes clear that any provisions contrary to IGRA are not in effect.  The Secretary's action does not authorize the gaming if the gaming is not lawful under IGRA.  The Secretary has no enforcement role under IGRA.  If the Seminole Tribe decides to offer certain gaming, it is subject to the risk of a discretionary enforcement action by the National Indian Gaming Commission ("NIGC") or even the risk of the wholly discretionary enforcement actions taken by the Attorney General of the United States that could subject the Tribe to civil or criminal sanctions.  *See e.g.*, 25 U.S.C. § 2714; 18 U.S.C. § 1166.[1] (initiation of an enforcement

---

[1]"The Attorney General has broad powers to conduct civil and criminal litigation, and the authority to make enforcement decisions 'includes the power to make erroneous decisions as well as correct ones.'"  *Swift & Co. v. United States*, 276 U.S. 311, 331-32 (1928).  It is not the province of the judiciary to interfere with that exclusive decision-making process, and courts have long acknowledged, in both criminal and civil cases, the Attorney General's authority to control the course of the federal government's litigation is "presumptively immune from judicial review."  *See Shoshone Bannock Tribes v. Reno*, 56 F.3d 1476, 1480 (D.C. Cir. 1995); *see also Newman v. United States*, 382 F.2d 479, 480 (D.C. Cir. 1967) ("Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made . . ."); *Lac Vieux Desert Band of Lake Superior Chippewa Indians of Michigan v. Ashcroft,* 360 F. Supp. 2d 64, 68 (D.D.C. 2004).

action against taken within the exclusive purview of the NIGC or the U.S. Attorney General.)

The enforcement decisions of the civil and criminal laws are committed to the discretion of these

enforcement agencies and are not subject to review under the APA. *See Heckler v. Chaney*, 470

U.S. 821, 831 (1985) (The "decision not to prosecute or enforce, whether through civil or

criminal process, is a decision generally committed to an agency's absolute discretion."); *Sierra*

*Club v. Whitman*, 268 F.3d 898, 903 (9th Cir. 2001) (An agency's decision to not take an

enforcement action is "typically committed to the agency's absolute discretion * * * .")

     If in the separate action brought by the Florida House of Representatives and the Florida

Speaker of the House in the State Supreme Court, it is held that the Governor did not have the

authority to bind the State, nothing the Secretary did in complying with his non-discretionary

duty to publish in the Federal Register affects the legality of the gaming.  Plaintiff asserts that the

Secretary's inaction was in direct contravention of IGRA.  However, the effect of inaction has no

effect on the legality of the Compact, if the games are not legal under IGRA.  Accordingly,

because no determination regarding IGRA issues was ever made by the Secretary as a result of

inaction, there can be no claim against the Federal Defendants.

> Under these circumstances, we cannot conclude that the NPS has taken any final
> action or engaged in a pattern of inaction that can be said to "mark the
> 'consummation' of the agency's decision making process" or to be "one by which
> 'rights or obligations have been determined,' or from which 'legal consequences
> will flow.'" *Bennett*, 520 U.S. at 177-78, 117 S.Ct. at 1168 (citations omitted);
> *see also Darby*, 509 U.S. at 144, 113 S.Ct. at 2543 (holding that administrative
> action will be considered "final" only if the agency "has arrived at a definitive
> position on the issue" in question) (citation omitted).

*National Parks Conservation Ass'n v. Norton*  324 F.3d 1229, 1238 (11th Cir. 2003).  Here the

Secretary arrived at no definitive position on the legality of the gaming in issue; APA review is

unavailable.  Plaintiff simply cannot state a claim under 706(2) of the APA for review of final

agency action, because the Secretary took no final agency action on the legality of the compact that is reviewable. *See Lac Du Flambeau*, 327 F. Supp. 2d at 999 (court held that plaintiffs could not challenge the Secretary's inaction because they were not challenging a final agency action).

Plaintiff has not attempted to state a claim a claim for relief under APA Section 706(1) for undue delay in failing to act. Nor could it do so because as noted above, Congress directed what would happen if the Secretary did not act by mandating publication. Congress does not allow an APA claim that one failed to act, but should have acted in a particular manner because of the law, unless that law is plainly ministerial. The United States Supreme Court has clarified that only discrete, nondiscretionary, mandatory duties may be enforced through 706(1), *Norton v. SUWA*, 542 U.S. 55 (2004), and Plaintiff has identified no such duty of that nature. By its nature and under IGRA, the Secretary has discretion in making any determination to approve or disapprove a compact. Additionally, Plaintiff has failed to state a claim under Section 706(2) of the APA because it has identified no final agency action that it challenges.

### 3. The Determination on Whether to Allow the 45 Days to Expire Without Disapproving Is Committed to Agency Discretion.

Nowhere in the statute is there any specification as to standards that would govern the judgment of the Secretary on whether, and on what basis, to permit the 45 days to expire without taking any official action. IGRA gives authority to the Secretary to approve a compact. Specifically:

> The Secretary <u>is authorized</u> to approve any Tribal-State compact entered into between an Indian tribe and a State governing gaming on Indian lands of such Indian tribe.

25 U.S.C. § 2710(d)(8)(A) (emphasis added). Congress made permissive the disapproval of a

compact, but if the Secretary chooses to take official action in disapproval, Congress has

established limitations on that disapproval:

> (B)  The Secretary <u>may</u> disapprove a compact described in subparagraph (A) only if such compact violates -
> (I)  any provision of this Act,
> (ii)  any other provision of federal law that does not relate to jurisdiction over gaming on Indian lands, or
> (iii)  the trust obligations of the United States to Indians.

25 U.S.C. § 2710(d)(8)(B) (emphasis added).  Nothing requires the Secretary to act within the

time specified or sets standards as to when the Secretary should or should not let the 45-day

period lapse.  Nothing <u>requires</u> the Secretary to act to disapprove on the basis of an unlawful

provision or on the ground that rulemaking had not occurred.

IGRA does not provide that the "The Secretary shall disapprove a compact . . . if such

compact violates the any provision of this Act."  Congress could have written the statute in that

manner but did not.  In sharp contrast to the permissive language actually used in IGRA, the

statute immediately uses mandatory language if the Secretary takes no official action to approve

or disapprove within the 45 days.  *See Kickapoo Tribe*, 827 F. Supp. at 43, 44.  The compact

"shall be considered to have been approved," 25 U.S.C. § 2710(d)(8)(C), to the extent it is

consistent with IGRA, and the "Secretary shall publish in the Federal Register notice that the

compact is considered to be approved," 25 U.S.C. § 2710(d)(8)(D), thus causing the compact to

"take effect."  25 U.S.C. §§  2710(d)(3)(B).  "Congress imposed an absolute forty-five day

deadline" after which it is deemed approved even if the compact or provisions are legally invalid

- - for lack of rulemaking or otherwise.  *Kickapoo Tribe,* 827 F. Supp. at 43, 44.

The Secretary's action is not appropriate for judicial review because he has been

accorded standardless discretion by the statute.  IGRA expressly authorizes such Secretarial

18

inaction and its implications to judicial reviewability:

> While the APA recognizes a presumption of judicial reviewability of administrative action, and even inaction, this presumption does not apply when Congress has clearly committed the issue to agency discretion. *Heckler v. Chaney*, 470 U.S. 821 (1985). In addition to the clear language of the IGRA authorizing gaming compacts to become law without Secretarial approval, the considerations adopted by the *Cheney* Court would appear to discourage judicial review of the Secretary's inaction herein. 470 U.S. at 831-2. *See also* RICHARD J. PIERCE, JR., 3 ADMINISTRATIVE LAW TREATISE § 17.7 at 1271-2 (2002 ed.). Courts have generally been reluctant to review agency inaction where, as here, there is no clear statutory standard against which to measure such decisions. *Baltimore Gas & Elec. Co. v. Federal Energy Regulatory Comm'n*, 252 F.3d 456 (D.C. Cir. 2001); *Chemical Mfrs. Ass'n v. EPA*, 870 F.2d 177, 249 (5th Cir. 1989); *Community Nutrition Inst. v. Young*, 818 F.2d 943 (D.C. Cir. 1987); *Wilmington United Neighborhoods v. Califano*, 615 F.2d 112 (3d Cir. 1980). *But see Heterochemical Corp. v. FDA*, 644 F. Supp. 271 (E.D.N.Y. 1986); *Greene v. Costle*, 577 F. Supp. 1225 (W.D. Tenn. 1983).

*State of New Mexico v. Pueblo of Pojoaque*, No CIV 00-851, Memorandum Opinion and Order on Third-Party Complaint dated April 17, 20003 ( Doc. No. 155) (See Exhibit B).

The statutory provision in 25 U.S.C. § 2710(d)(8) "is as open-ended as it could conceivably be . . . . Because no . . . standards are set forth according to which the [the Secretary] must exercise its discretion, a court has quite literally no indicia by which it may evaluate that exercise and hence no power of review under § 701(a)(2)." *Greater New York Hosp. Assoc. v. Mathews*, 536 F.2d 494, 497-98 (2d Cir. 1976); *Board of County Com'rs of County of Adams v. Isaac*, 18 F.3d 1492, 1498-99 (10th Cir. 1994) ("'Reasonably necessary for air commerce' does not provide the court with a justiciable standard of review."). By comparison, here we have literally no standard. A court is ill-equipped to evaluate that action in light of the time period mandated by Congress for the decision to be made and without express and detailed guidelines to determine the propriety of the action taken.

The nature of the broad general concerns a Secretary may have in disapproving a

compact within that time frame is underscored here, where unresolved issues of state law are being adjudicated before the State Supreme Court.  Where an agency decision requires the exercise of expert judgment in such a short time on unique issues of state law the province of the state courts, and where there are manifestly no standards provided by Congress, judicial review under the APA is inappropriate.  *Cf.  American Disabled For Attendant Programs Today v. United States Dept. of Housing and Urban Dev*, 170 F 3d. 381, 389 (3d Cir. 1999).[2]

This is a clear case where Congress committed to agency discretion the decision not to act.  First, the language of the statute is distinctly discretionary as to whether the Secretary disapproves a compact.  The Secretary is "authorized to approve any Tribal state compact."  25 U.S.C. § 2710(d)(8)(A).  He "may disapprove," but only if the compact violates provisions of IGRA, other federal law, or trust obligations - - - IGRA does not direct or mandate approval or disapproval in any circumstance.

**B.      The Seminole Tribe and the State of Florida Are Indispensable Parties.**

At its core this action directly affects the validity of the contract between two parties that are not part of this litigation, the State of Florida and the Seminole Tribe of Florida.  This action does not challenge any Secretarial action that made any determinations on the validity of the

_____

[2]Pragmatic issues - - involving predictions of whether a legislature might approve an amended compact deleting or modifying questionable provisions and whether it would be better considering the social and sovereign needs of a tribe to have the compact deemed approved with only legal provisions placed in effect - - are matters of the kind Congress could be well understood to leave to the agency.  APA judicial review over inaction, that would otherwise contemplate vacating the choice and of inaction and publication in the Federal Register, would simply engender delay.  It would be contrary to the language and structure of the statute that gives high priority to placing the compacts in effect whether the Secretary has acted or not, irrespective of reasons for that inaction.  Such factors presented are common or typical features of the statutes and contexts where matters are committed to agency discretion by Congress.  *See* R. Pierce, Administrative Law Treatise, § 17.6, 1262 (4th ed. 2002), and cases cited therein.

Compact or its terms, because the Secretary took no final action.  The underlying legality is an issue presently in litigation in which the Secretary is not a party at the State Supreme Court. This court having neither the final agency issues before it under any valid APA challenge, and having two necessary and indispensable parties not before the Court, the Court, consistent with *Kickapoo Tribe v. Babbit* and other cases, must dismiss this action on jurisprudential grounds.

**1.    The Seminole Tribe of Florida and the State of Florida Are Necessary Parties.**

"Rule 19 of the Federal Rules of Civil Procedure establishes a two-step procedure for determining whether an action must be dismissed because of the absence of a party needed for a just adjudication."  *Cherokee Nation of Oklahoma v. Babbitt* , 117 F.3d 1489, 1495-96 (D.C. Cir. 1997); *see also Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279 (11th Cir. 2003).  Rule 19(a) provides that:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the subject of the action and is so situated that the disposition of the action in the person's absence may (I) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

Rule 19(b) provides that if such a person cannot be made a party, the court must determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed; the absent person thus being indispensable.  Fed. R. Civ. P. 19(b).  In making such a determination, the factors to be considered by the court include:

21

[F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

Therefore, the court must first determine "whether the absent party is 'necessary' to the litigation according to [the] factors enumerated in Rule 19(a)." *Cherokee Nation of Oklahoma*, 117 F.3d at 1496. Then, if a necessary party cannot be joined, the court must examine the factors in 19(b) to "determine whether in equity and good conscience, the action should proceed among the parties before it, or should be dismissed, the absent person being regarded as indispensable." *Id.*

In determining whether a party is necessary, the following three factors are considered:

(1) whether complete relief would be available to the parties already in the suit, (2) whether the absent party has an interest related to the suit which as a practical matter would be impaired, and (3) whether a party already in the suit would be subjected to a substantial risk of multiple or inconsistent obligations.

*Mescalero Apache Tribe v. State of New Mexico*, 131 F.3d 1379, 1383 (10th Cir. 1997).

Based on the above factors, the Seminole Tribe is a necessary party to this action. The Compact between the Tribe and the State of Florida is a contract. *Texas v. New Mexico*, 482 U.S. 124, 129 (1987). In *Roos v. Texas Co.*, 23 F.2d 171, 172 (2d Cir. 1927), *cert. denied*, 277 U.S. 587 (1928), Judge Learned Hand set out the general rule that all parties to a contract must be present in a suit where the contract's validity is questioned. In addition, Indian tribes have routinely been deemed necessary parties to actions touching upon their property and contractual interests. *Enterprise Mgt. Consultants v. United States, ex rel. Hodel*, 883 F.2d 890 (10th Cir.

1989).

       This lawsuit alleges that certain provisions of the Compact are invalid, seeks to somehow set aside the Secretary's publication of the Compact in the Federal Register, and seeks to enjoin the Governor of Florida from implementing the Compact.  Plaintiff has more than questioned the validity of the Compact and seeks to enjoin its implementation, which directly impacts the Tribe's contractual interests.  This is the quintessential situation to which Rule 19 applies:

> No procedural principle is more deeply embedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable.

*Fluent v. Salamanca*, 928 F.2d 542, 547 (2d Cir. 1991) (citing *e.g.*, *McClendon v. United States*, 885 F.2d 627, 633 (9th Cir. 1985)) *accord United States v. Creative Games Technology, Inc.*, 1994 WL 320296 (8th Cir. 1994)[3/] ("it is simply inconceivable to us that a suit claiming that a contract is invalid should be allowed to proceed in the absence of all parties to the contract").

       The second part of Rule 19(a)(2), sub-part (ii) also independently confers necessary party status on the Seminole Tribe.  Any relief granted to Plaintiff would surely be opposed by the Tribe.  If the Tribe was to bring its own action challenging the Secretary's actions related to the validity of the Compact, this Court's decision would not serve as a bar because it is not party to this lawsuit.  A separate action on the same issues could be initiated by the Seminole Tribe (possibly in a different Circuit, raising the prospect of a differing view on the merits and a differing judicial outcome).  The exact same option is open to the State of Florida.  Thus, the Secretary is an existing party who is subject to a substantial risk of inconsistent obligations or

---

[3/]Rule 19(a) inquires only as to whether the absent party has a "claim to interest," regardless of the ultimate validity of that claim.  *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992).  Here, the Tribe's interest is indisputable.

judgments. The elements of Rule 19(a)(2)(ii) are plainly met under this scenario.

In addition, a state party to a Tribal-State Compact under IGRA is a necessary party to this adjudication:

> Clearly, as the district court assumed, the State of Kansas has an interest in the validity of a compact to which it is a party, and this interest would be directly affected by the relief that the Tribe seeks. Thus, Kansas is a necessary party under Rule 19(a).

*Kickapoo Tribe*, 43 F.3d at 1495; *Dewberry v. Kulonugoski*, 406 F. Supp. 2d 1136, 1146 (D. Oregon 2005) (court dismissed challenge to a Tribal-State compact with State of Oregon on grounds of indispensable party). The State of Florida has an interest in the validity of the Compact and is directly affected by the relief Plaintiff seeks. *See Pueblo of Pojoaque*, Civ. 03-713 at 10. The fact that the Governor is being sued does not eliminate concerns about the absence of the State of Florida as a party. In *Kickapoo Tribe*, the Governor was a party plaintiff in the litigation, and the D.C. Circuit recognized the indispensability of the State. *Id.*, 43 F.3d at 1495-99. It should be noted that the Florida Attorney General brought suit to seek to stop publication in the Federal Register in the District of Columbia, but was unsuccessful.

The Seminole Tribe and the State of Florida, like the State of Kansas in *Kickapoo Tribe of Indians*, are parties to the compact at issue, and have an interest in the validity of the compact. Plaintiff seeks an injunction that directly affects the Seminole Tribe's and the State of Florida's interests. Thus, the Tribe and the State of Florida are necessary parties to this lawsuit with a compelling interest in the validity of the compact at issue.

  2. **The Seminole Tribe of Florida and the State of Florida Cannot Be Joined in this Action Because of Their Sovereign Immunity.**

Although a necessary party, the Seminole Tribe of Florida cannot be joined in this action

24

due to its sovereign immunity.  "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978).  Thus, "absent tribes, while necessary, cannot be joined due to their sovereign immunity." *Shermoen*, 982 F.2d at 1318.[4]

The State of Florida cannot be joined to this action because of its sovereign immunity. *See Kickapoo Tribe*, 43 F.3d at 1496.  The State of Florida is a sovereign entity in the federal system under the Eleventh Amendment to the U.S. Constitution.  *Seminole Tribe of Florida v. Florida*, 116 S.Ct. 1114, 1122 (1996); *Blatchford v. Native Village of Noatak and Circle Village*, 501 U.S. 775, 782 (1995).  Thus, the State of Florida cannot be joined in this suit.

### 3.	This Lawsuit Cannot Proceed "in Equity and Good Conscience" Without the Seminole Tribe of Florida and the State of Florida Because They Are Indispensable Parties.

The Seminole Tribe of Florida and the State of Florida are not only necessary parties under Rule 19(a), they are also an indispensable parties.

Rule 19(b), as set out above, lists four factors to balance in determining whether a party is indispensable and whether an action should proceed or be dismissed.  However, recent case law -- especially that dealing with Indian tribes and states -- makes clear that application of these factors is severely truncated when the necessary party cannot be joined due to immunity.  "It has been held that when an indispensable party is immune from suit, there is very little room for balancing of other factors set forth in Rule 19(b), because immunity may be viewed as one of

---

[4]The possibility that the Seminole Tribe could waive its sovereign immunity and intervene in this action is irrelevant to a Rule 19 analysis.  *Confederated Tribes of the Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1500 (9th Cir. 1991); *Wichita and Affiliated Tribes of Oklahoma*, 788 F.2d at 775.

those interests compelling by themselves." *Fluent*, 928 F.2d at 548 (citations omitted)*; Wichita and Affiliated Tribes of Oklahoma*, 788 F.2d at 768; *Id.*, 788 F.2d at 765, 777 & n.13; *Enterprise Mgt. Consultants,* 883 F.2d at 894; 3A Moore's Federal Practice, ¶ 19.15 at p. 19-266 n.6 (2d ed. 1994).  As the Second Circuit has explained:

> The rationale behind the emphasis placed on immunity in the weighing of Rule 19(b) factors is that the case is not one where some procedural defect such as venue precludes litigation of the case.

*Fluent*, 928 F.2d at 548 (citation omitted).  Thus, the Court's discretion is narrowed because of the importance of the Seminole Tribe of Florida's and the State of Florida's immunity, resulting in consideration of the factors in 19(b) being peripheral.  Hence, the sovereign immunity of the two parties to the Compact, the Seminole Tribe and the State of Florida, compels dismissal of this lawsuit and demonstrates the inability of Plaintiff to show a likelihood of success on the merits necessary to support its request for a preliminary injunction.

> **a.**    **A Judgment Rendered in this Matter Would Substantially Prejudice the Seminole Tribe of Florida and the State of Florida.**

The first factor is essentially the same as the inquiry under Rule 19(a), which involves determining whether continuing the action without the party's presence would impair its ability to protect its interest.  *Enterprise Mgt. Consultants*, 883 F.2d at 894 n.4; *Quileute Indian Tribe v. Babbitt* , 18 F.3d 1456, 1460 (9th Cir. 1994); *Confederated Tribes*, 928 F.2d at 1499; *Kickapoo Tribe of Indians*, 43 F.3d at 1495; *American Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1024-28 (9th Cir. 2002) (race track owner's challenge to the authority of the Governor of Arizona with respect to Tribal-State gaming compacts dismissed due to tribes' indispensability); *Dewberry*, 406 F. Supp. at 1146-1151.

A judgment for Plaintiff in this case would result in a declaration that certain provisions

of the Compact are invalid, which would have the effect of voiding the entire Compact. *See* Complaint for Declaratory and Injunctive Relief Under 5 U.S.C. § 702 and 42 U.S.C. § 1983, Prayer for Relief, (a) and (b), and Exhibit A, Part XIV.A. This impact cannot be overcome by any suggestion that the Federal Defendants could adequately represent the Seminole Tribe's or the State of Florida's interests. First, the Tribe is presently suing the Secretary in the Southern District of Florida for the alleged failure to act under IGRA to issue procedures in lieu of a compact that would authorize Indian gaming. Although the Secretary has sought to have the lawsuit dismissed, the Tribe has sought to only stay the case. The Secretary's seeking of a dismissal of that lawsuit cannot reasonably be interpreted to mean that the Secretary fairly or adequately represents the interest of its adversary in gaming litigation, the Tribe.

Second, the Secretary is not even aligned as a trustee with respect to Indian gaming responsibilities. IGRA "cannot be fairly interpreted as imposing fiduciary obligations." *Pueblo of Santa Ana v. Kelly*, 932 F. Supp. 1284, 1298 (D.N.M. 1996), *aff'd* 104 F.3d 1546 (10th Cir. 1996). "Nothing in [IGRA] indicates any intention by Congress to recognize or create a fiduciary duty. The Act does not create a situation in which the federal government holds resources in trust for the Indians." *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. U.S.* 259 F. Supp.2d 783, 791 (W.D. Wis. 2003); *Vizenor v. Babbitt*, 927 F. Supp. 1193, 1201 (D. Minn. 1996); *Pueblo of Santa Ana*, 932 F. Supp. 1298*; United States v. 1020 Electronic Gambling Machines*, 38 F. Supp. 2d 1213, 1216 (E.D. Wa. 1998) ("there is no basis for imposing specific trust duties upon the United States due to the Secretary's role in Indian gaming.").

Third, the Secretary's role in the IGRA approval process precludes it from adequately

representing the Seminole Tribe or the State of Florida.  The Governor on behalf of the State of

Florida and the Tribe recommended approval of the Compact by the Secretary.  The Secretary

did not act to approve or disapprove.  He did not opine that the games were lawful or that the

Governor had the authority to compact for the games.  The Secretary is not in a position to

advocate on the legality of such gaming where he took no position on it in the administrative

process.  The Secretary is not in a position to advocate tribal interests or state interests when

evaluating the compact as a neutral under the discretionary authority given by Congress to

choose whether to act to approve or disapprove on the basis, among other things, of whether the

compact is consistent with IGRA and other federal law.  25 U.S.C.  § 2710 (d)(8)(B)(i) and (ii).

Finally, the Tribe's and the State's "interest . . . in their sovereign right not to have their

[contractual rights] judicially determined without consent is an interest which the United States'

presence in [the suit] cannot protect."  *Enterprise Mgt. Consultants*, 883 F.2d at 894.

Thus, in view of the relief requested by Plaintiff and the Seminole Tribe's and the State

of Florida's interest in the validity of the Compact provisions, there is no way the Court can

avoid prejudice to them.  *Kickapoo Tribe*, 43 F.3d at 1498; *Lac Du Flambeau*, 327 F. Supp. 2d at

1001.  Having the Governor participate in the litigation as a party does not alter the prejudice to

adjudicating the State's interest in the Compact in absence of the State.  *Kickapoo Tribe*, 43 F.3d

at 1498.  This is especially so given that the State filed suit in an attempt to block publication in

the federal district court for the District of Columbia; and given that the State, by the Speaker of

the House, has sought to adjudicate the legality of the gaming and the compact on a side opposite

to the Governor in the State Supreme Court.

**b.**    **The Prejudice to the Seminole Tribe of Florida and the State of Florida Cannot be Lessened or Avoided by Protective Provisions in the Judgment or the Shaping of Relief.**

The prejudice to the Seminole Tribe of Florida and the State of Florida cannot be lessened or avoided in this action due to nature of the relief requested by Plaintiff.  While the Tribe and the State could waive their sovereign immunity and intervene in this action, they have not done so.  In that regard, the "[f]ailure to intervene is not a component of the prejudice analysis where intervention would require the absent party to waive sovereign immunity." *Kickapoo Tribe*, 43 F.3d at 1498.

In addition, the Ninth Circuit Court of Appeals, in a case brought by a member of the Navajo Nation challenging federal approval of a settlement agreement, determined that "prejudice to the Navajo Nation and Hopi Tribe could not be effectively minimized because relief" for the plaintiff could not be effectively shaped, in the absence of the Navajo Nation and Hopi Tribe, "to avoid prejudice to their interests."  *Kescoli v. Babbitt*, 101 F.3d 1304, 1311 (9th Cir. 1996) (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir. 1990)) (prejudice not lessened if tribes required to intervene and waive sovereign immunity).

No protective provisions of the judgment could be fashioned to protect the Seminole Tribe of Florida's and the State of Florida's interests.  "[A]ny relief that [Plaintiff] obtains in this case will have an inevitable effect on the[m]."  *Wichita and Affiliated Tribes of Oklahoma*, 788 F.2d at 776; *Republic of Philippines v. Pimentel*, _ U.S. _, slip op. June 12, 2008, citing *Wichita and Affiliated Tribes of Oklahoma*, at 17; *see also Lac Du Flambeau*, 327 F. Supp. 2d at 1001 (court could "imagine no way by which the prejudice to [the State and Indian tribe] can be lessened or avoided.").

**c.    A Judgment Rendered in the Seminole Tribe of Florida's and the State of Florida's Absence Will not be Adequate.**

A judgment by this Court certainly cannot be adequate given the absence of the Seminole Tribe of Florida and the State of Florida and the prospect of a separate suit if Plaintiff prevails. Judge Stanley articulated this concern in *Kickapoo Tribe of Oklahoma v. Lujan*, 728 F. Supp. 791, 797 (D.D.C. 1990):

> And, again, if the Band is unable to represent itself in this action and the Plaintiff were to obtain a favorable judgment, the Band likely would bring a new lawsuit against the Secretary.  After all, in considering the adequacy of the judgment, the Court must consider "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies," *Provident Tradesmens Bank & Trust Company v. Patterson*, 390 U.S. 102, 111(1968), and in this case, further litigation could be anticipated.

It is foreseeable that in the event of a judgment in favor of Plaintiff in this matter and if there was some available injunctive relief, which Federal Defendants contend that there is not, directing the Secretary to take an action at odds with IGRA's provisions, the Seminole Tribe of Florida, and potentially the State of Florida, would bring suit against the Secretary.  *See Pierre v. Norton*, 498 F. Supp. 2d 214, 221 (D.D.C. 2007) (finding that Tribe, as a non-party to the lawsuit, would not be bound by the court's order and thus likely to file its own suit.  "Conflicting rulings and resulting obligations could well result.").  In addition, a judgment rendered in favor of Plaintiff will adversely affect the Seminole Tribe of Florida's interests in the Compact, causing the Tribe to lose the benefit of the Compact.  An adjudication in this Court will not be a complete settlement of the controversy.  Any judgment rendered in their absence will not be adequate. The Seminole Tribe of Florida and the State of Florida are indispensable parties to the litigation.

### 4.     Plaintiff has an Adequate Remedy if the Action is Dismissed for Nonjoinder.

Finally, Plaintiff has an adequate remedy if this action is dismissed for nonjoinder. Currently, an action is pending before the State of Florida Supreme Court in which Florida's House of Representatives and the Speaker of the House are challenging Governor Crist's authority to enter into the Compact and bind the State to its terms.  Plaintiff could have sought to pursue intervening party status or amicus status in that action.  A judgment by Florida's highest court will determine the validity of the Compact under Florida's state law.  The existence of the Florida State Supreme Court action provides Plaintiff with an adequate remedy upon its conclusion.

Even if Plaintiff had no remedy, Indian tribes have routinely been deemed indispensable parties to action attacking the validity of their contractual interests.  *See, e.g.*, *Manybeads v. United States*, 209 F.3d 1164, 1165 (9th Cir. 2000) (lawsuit dismissed on indispensable party grounds where complete relief would undo agreement with Hopi Nation, which could not be sued unless it waived sovereign immunity); *Clinton v. Babbitt*, 180 F.3d 1081, 1088-89 (9th Cir. 1999) (Indian tribe held indispensable party; absence of alternative forum to redress plaintiffs' grievances held insufficient to overcome tribe's sovereign immunity); *Kescoli v. Babbitt*, 101 F.3d 1304, 1309-12 (9th Cir. 1996) (Navajo Nation, as party to contracts at issue, was indispensable party; plaintiff's interest in litigating claim was outweighed by tribe's interest in preserving sovereign immunity).  The Supreme Court's recent ruling in *Republic of Philippines c. Pimentel*, _U.S._, slip op., June 12, 2008, in the context of an indispensable party defense involving a foreign sovereign, confirms that the courts should give sovereign immunity interests controlling weight even where "in some instances, that plaintiffs will be left without a forum for

definitive resolution of their claims." *Id.*, slip op. at 19.  Here, Plaintiff could have sought

joinder in the Florida Supreme Court action, or filed its own state action.

## II.   PLAINTIFF HAS NOT DEMONSTRATED ANY IRREPARABLE INJURY.

Plaintiff fails to show that it would be irreparably injured if its motion for preliminary

injunction were denied.  When a party seeks injunctive relief, it must demonstrate an immediate

and irreparable harm that justifies the exercise of a court's equitable powers prior to a trial on the

merits. *Wisconsin Gas Co. v. Fed. Energy Reg. Comm.*, 758 F.2d 669, 674 (D.C. Cir. 1985).

The burden of justifying interim relief lies with the movant, and threatened, speculative harm

does not amount to irreparable injury for purposes of justifying an injunction. *Wisconsin Gas

Co.*, 758 F.2d at 674 (the alleged injury "must be both certain and great; it must be actual and not

theoretical.  Injunctive relief 'will not be granted against something merely feared as liable to

occur at some indefinite time.'") (quoting *Connecticut v. Massachusetts*, 282 U.S. 660, 674

(1931)).

An injunction is limited to prospective relief.  *Alabama v. U.S. Army Corps of Engineers*,

424 F.3d 1117, 1133 (11th Cir. 2005); *see Dombrowski v. Pfister*, 380 U.S. 479, 485 (1965)

("Injunctive relief looks to the future.").  "Preliminary injunctive relief derives from the

necessity to restrain or compel conduct in those extraordinary situations where irreparable injury

might result from delay or inaction." *Alabama*, 424 F.3d at 1133 (citations omitted).  A

preliminary injunction may not be granted for past conduct.  *Id.* ("The sole function of an action

for injunction is to forestall future violations.  It is so unrelated to punishment or reparations for

those past that its pendency or decision does not prevent concurrent or later remedy for past

violations by indictment of action for damages by those injured." *Id.* (quoting *United States v.*

*Or. State Med. Soc.*, 343 U.S. 326, 333 (1952)).

Plaintiff articulates no concrete irreparable harm that will be resolved by the injunction sought against the Secretary.  The specific injunctive relief sought in Plaintiff's moving papers seeks to bar the Secretary "from implementing or enforcing the Compact's illegal provisions found in Part III.E.2 of the Compact."  *See* Motion for Preliminary Injunction at 3, ¶ 8, and Prayer for Relief at 5.  The Secretary has no role under IGRA to implement or enforce the Compact's provisions.  An injunction would do nothing to stop the fear Plaintiff has that it will lose customers.  There is nothing more for the Secretary to do under the scheme created by IGRA.  The Secretary does not implement or enforce the table gaming provision in the Compact. Such an injunction in no way inhibits the Seminole Tribe from embarking on the Tribe's plan to begin table gaming operations.

The Secretary has already done what was required under IGRA by complying with the ministerial directive by Congress to publish notice in the Federal Register.  There is nothing submitted by Plaintiff, or anything extra-record, to suggest that the Seminole Tribe will voluntarily not introduce the table game because the Secretary is not allowed to implement or enforce the Compact provision (something it has no role in anyway).  It can be assumed that the Tribe, not a party to this action, not bound by rulings in this case, and not needing any further acts of implementation or enforcement by the Secretary, or for that matter the Governor, would indeed introduce the table games even if such an injunction issued.  It would be wholly counter-intuitive speculation that would suggest that the Tribe would not embark on such gaming and that Plaintiff would be benefitted by the express relief it requests.  The injunction Plaintiff seeks does nothing to prevent the harm it contends will befall them, and cannot being taken to weigh in

its favor in any manner.

Plaintiff's claims of immediate and irreparable harm are also suspect.  Plaintiff includes the results of a telephone survey, which it alleges shows forecasts of imminent economic harm. The survey is based on telephone calls to 400 out of 45,200 households that have visited Plaintiff's facility.  This alleged harm is speculative and based on conjecture.  Plaintiff has not demonstrated that it will face immediate and irreparable injury of its business.  First, Plaintiff's pollster, Mr. Frederick, makes no conclusion based upon any stated of degree of certainty that future consumer behavior will be altered and to what extent after considering the polling.  Mr. Frederick does not attempt to extrapolate the poll to a prediction of future behavior.  Mr. Frederick restates the poll results without making any expert opinion on the basis of this limited poll.  Instead, the poll results provide a present inclination by several people polled, but Mr. Frederick draws no expert conclusions on what hypothetically may or may not materialize in the projected behavior of the entire PPI gaming market based these few interviews.  The observations on which he bases his declaration are limited to a recitation of the interview answers and do not demonstrate any immediate or irreparable harm.

Second, the survey suggests that certain customers "would go to the Seminole casinos more often and the Isle of Capri Casino at Pompano Park less often if the Seminole casinos start to offer blackjack, baccarat, and all other card games."  Plaintiff's Memorandum in Support of Motion for Preliminary Injunction ("Plaintiff's Memorandum"), Declaration of Keith Frederick, ¶ 11.  Indeed, the first question asked of the survey respondents is whether they predict that may be "more likely to attend one of [the] Seminole Indian Casinos or not."  *Id*.  Such a survey by its nature speculates on the future economic decisions of others based upon questions of a sample;

such guesses or projections on future personal behavior are far from the certainty required to establish irreparable harm.  The statement that certain customers would frequent Plaintiff's establishment less often is not the type of immediate and irreparable harm that supports the extraordinary relief sought by Plaintiff.[5]

Plaintiff fails to demonstrate that it will actually suffer any harm.  It is clear that no presumption of irreparable injury exists.  *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987).  This failure is sufficient grounds by itself for the Court to deny Plaintiff's motion. *Sierra Club*, 171 F. Supp. 2d at 1356-57; *Smith, Bucklin & Assoc. v. Sonntag*, 83 F.3d 476, 477 (D.C. Cir. 1996) (affirming district court refusal to issue preliminary injunction where plaintiff failed to demonstrate irreparable harm).  Because Plaintiff has not established that there is a concrete threat of irreparable harm in the absence of a preliminary injunction, its motion should be denied.

## III.  AN INJUNCTION WOULD NOT SERVE THE PUBLIC INTEREST AND THE BALANCE OF HARMS FAVORS DENIAL OF EMERGENCY RELIEF.

A party moving for a preliminary injunction carries a particularly heavy burden where, as here, the result of the preliminary injunction is to impede the orderly administration of a governmental responsibility intended to serve the public interest.  *See Yakus v. United States*, 321 U.S. 414, 440 (1944).

Congress has articulated the explicit remedy for inaction by the Secretary.  *See Lac Du Flambeau*, 327 F. Supp. 2d at 999.  In effect it has already weighed the public interest.  It

---

[5]The Declaration of Bernard Goldstein fails to add any certainty.  Neither does Mr. Goldstein extrapolate on the basis of the limited poll, but instead merely asserts that "**[s]hould** customers migrate . . . the resulting revenues will be **potentially** crippling."  Plaintiff's Memorandum, Exhibit B at 3.  Such an assertion does not dispel the speculative nature of the harm.

directed publication in the Federal Register, which the Secretary has done.  Congress limited the approval of a compact, where there is no action on a compact, to provisions that are consistent with IGRA.  There is no further action that the Secretary may take.  Trying to somehow rewind the administrative process as dictated by Congress will go against the public interest as articulated by Congress and will go against the promotion of an orderly administrative process. *See Committee of Central American Refugees v. INS*, 795 F.2d 1434 (9th Cir. 1986); *Sampson v. Murray*, 415 U.S. 61, 83 (1974); *see In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litigation,* 340 F.3d 749, 760 (8th Cir. 2003) ("Congress viewed effective regulation and respect for regulatory authority as being in the public's interest.") (emphasis added).

To the extent Plaintiff is correct that it will secure less gambling revenue, a sovereign tribe will secure an opportunity to attract that gaming revenue that they can devote for their governmental programs.  Moreover, it is wholly speculative that the Seminole Tribe will decide to alter its game offering plans based upon a ruling in a lawsuit to which it is not a party.  *See Pierre*, 498 F. Supp. 2d at 221 (finding that Tribe, as a non-party to the lawsuit, would not be bound by the court's order and thus likely to file its own suit).  The specific harm Plaintiff alleges cannot be remedied by the injunction sought.  There is no relief that may be granted to Plaintiff in this action.  Its motion for injunctive relief only serves to disrupt the administrative process and furthers no public interest.

Accordingly, the public interest and the balance of harms favors denial of Plaintiff's Motion for Preliminary Injunction.

**CONCLUSION**

Based on the aforementioned, Federal Defendants respectfully request that Plaintiff's

Motion for a Preliminary Injunction be denied.

Dated: June 17, 2008

Respectfully submitted,

RONALD J. TENPASS
Assistant Attorney General
Environment & Natural Resources Division

By:   */s/ Jody H. Schwarz*
JODY H. SCHWARZ DC Bar # 493998
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, DC 20004
Telephone: (202) 305-0468
Fax:        (202) 305-0506

Of Counsel:
ANDREW S. CAULUM                      EDWARD J. PASSARELLI  VA Bar # 16212
WI Bar 1023019                        Assistant Chief
United States Department of the Interior   Natural Resources Section
Office of the Solicitor -             Environment & Natural Resources Division
Division of Indian Affairs           U.S. Department of Justice
1849 C Street NW - MS 6513 MIB       P.O. Box 663
Washington, DC 20240                 Washington, DC 20004
                                     Telephone: (202) 305-0468
                                     Fax:        (202) 305-0506


Attorneys for Defendants Dirk Kempthorne, United
States Secretary of the Interior and George Skibine,
United States Acting Assistant Secretary of the
Interior

## CERTIFICATE OF SERVICE

I, Jody H. Schwarz, hereby certify that on this 17th day of June 2008, I caused a copy of the foregoing **Federal Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction** to be served upon the following attorneys of record by electronically filing said document with the Clerk of the District Court using its ECF system, which electronically notifies them of the service of said documents and provides them with true and correct copies thereof.

Wilbur E. Brewton
Jack M. Skelding, Jr.
Brewton Plante, P.A.
225 South Adams Street, Suite 250
Tallahassee, FL 32301
Phone: (850) 222-7718
Fax:    (850) 222-8222

David Overlock Stewart
Ropes & Gray
One Metro Center
700 12th Street, NW, Suite 900
Washington, DC 20005-3948
Phone: (202) 508-4600
Fax:    (202) 508-4650

*/s/ Jody H. Schwarz*
JODY H. SCHWARZ