IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

PPI, INC.,

       Plaintiff,

vs.                                           CASE NO.: 4:08cv248-SPM

DIRK KEMPTHORNE, in his official
capacity as Secretary of the Interior,
GEORGE SKIBINE, in his official
capacity as Acting Assistant Secretary–
Indian Affairs, and CHARLES CRIST,
in his official capacity as Governor
of Florida,

       Defendants.
_____/

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, P.P.I, Inc. ("PPI"), is licensed by the State of Florida to operate the Pompano Harness Racing Track in Pompano Beach, Florida. PPI is allowed under Florida law to offer pari-mutuel wagering, poker, and slot machines at its Pompano Park facility. It is prohibited by Florida law to operate any other type of gaming activities.

Under 5 U.S.C. § 704 of the Administrative Procedure Act, PPI seeks judicial review of the approval of the tribal-state compact that ostensibly allows the Seminole Tribe of Florida to conduct Class III gaming, specifically banked

card games such as blackjack and baccarat. Named as defendants are Dirk Kempthorne, in his official capacity as Secretary of the Interior, and George Skibine, in his official capacity as Acting Assistant Secretary–Indian Affairs (collectively "federal defendants"). PPI is also suing the Governor of the State of Florida, Governor Crist, under 42 U.S.C. § 1983 for executing the compact in violation of PPI's rights under the Indian Gaming Regulatory Act, 25 U.S.C. § 2710(d)(1).[1]

    PPI argues that the compact is invalid to the extent it allows the Seminole Tribe to conduct banked card games that are prohibited by Florida law. PPI seeks judgment setting aside the final agency action approving the compact, and a declaratory judgment that the provisions of the compact concerning banked card games violates the Indian Gaming Regulatory Act. PPI also seeks a declaratory judgment against Governor Crist and a permanent injunction to

---

[1] Although the parties do not raise the issue, the Eleventh Circuit Court of Appeals has held that there is no implied right of action under the Indian Gaming Regulatory Act for a State to enjoin a tribe from conducting Class III gaming without a valid compact. Florida v. Seminole Tribe of Fla., 181 F.3d 1237, 1248 (11th Cir. 1999). Moreover, Congress has provided an enforcement scheme through federal criminal prosecution (18 U.S.C. § 1166) and fines issued by the National Indian Gaming Commission (25 U.S.C. § 2713) to address illegal tribal gambling. Id. at 1248-49. Under the circumstances, it is doubtful that PPI has a federal right under the Indian Gaming Regulatory Act that is enforceable under § 1983 to enjoin unlawful gambling. See Schwier v. Cox, 340 F.3d 1284, 1291-92 (11th Cir. 2003) (explaining when federal statutory rights are enforceable under § 1983). Because the denial of a preliminary injunction is warranted on other grounds, the Court will not address this issue.

CASE NO.: 4:08cv248-SPM

enjoin implementation of the provisions.

PPI contends that it stands to suffer irreparable injury through the loss of competitive standing, customer good will, and revenue, because its customers will be diverted to the banked card games that are offered by the Seminole Tribe. PPI requests a preliminary injunction (doc. 4) against the federal defendants and Governor Crist to prohibit them from implementing or enforcing the banked card game provisions of compact during the pendency of this litigation.  The federal defendants and Governor Crist filed responses in opposition (doc. 14 and 15). PPI filed a reply (doc. 23) and supplemental authority (docs. 24 and 25).

## I.     Indian Gaming Regulatory Act

The Indian Gaming Regulatory Act is a federal law that governs gaming on Indian lands.  Although regulation of Indian gaming remains the exclusive jurisdiction of the federal government, the Act acknowledges State interests, "as a matter of criminal law and public policy," to prohibit some gaming activity and to enter into gaming compacts with Tribes.  25 U.S.C. § 2701(5).

The Act divides gaming into three classes.  Class I gaming is defined as "social games solely for prizes of minimal value or traditional forms of Indian gaming engaged in by individuals as part of, or in connection with, tribal ceremonies or celebrations."  25 U.S.C. § 2703(6).  Class I gaming falls under the exclusive jurisdiction of the tribes and is unregulated by state or federal law. 25 U.S.C. § 2710(a)(1).

Class II gaming includes bingo, pull-tabs, lotto, and similar games. 25 U.S.C. § 2703(7)(A)(i). It also includes card games that are not banked, to the extent the games comply with any state regulations on hours of operation and limitations on wagers and pot sizes. 25 U.S.C. § 2703(7)(A)(ii). Class II gaming falls under the jurisdiction of the Tribes to regulate, subject to the approval of the Chairman of the National Indian Gaming Commission. 25 U.S.C. § 2710(b).

Class III gaming includes any type of gaming that is not included in Class I or II, such as slot machines, banked card games, roulette, and craps. 25 U.S.C. § 2703(8). Class III gaming falls under the jurisdiction of the tribes to regulate, subject to the approval of the Chairman of the National Indian Gaming Commission. 25 U.S.C. § 2710(b). The States also have jurisdiction under tribal-state compacts that are negotiated between a Tribe and a State, and subject to approval by the Secretary of the Interior. 25 U.S.C. § 2710(d)(1) and (8).

There are two provisions of the Act that are at issue in this case. One provision provides that "Class III gaming activities shall be lawful on Indian lands only if such activities are . . . located in a State that permits such gaming for any purpose by any person, organization, or entity . . . ." 25 U.S.C. § 2710(d)(1). Under this provision, a State may prohibit Class III gaming, even on Indian lands,

so long as the prohibition applies without exception throughout the State.[2] Unless otherwise agreed in an approved compact, prosecution of state gambling laws remains within the exclusive jurisdiction of the federal government, which will apply state gambling laws "in Indian country in the same manner and to the same extent as such laws apply elsewhere in the State." 18 U.S.C. § 1166(d).

The other provision at issue concerns Secretarial approval of tribal-state compacts. It provides that:

> (A) The Secretary is authorized to approve any Tribal-State compact entered into between an Indian tribe and a State governing gaming on Indian lands of such Indian tribe.
>
> (B) The Secretary may disapprove a compact described in subparagraph (A) only if such compact violates–
>     (i) any provision of this chapter,
>     (ii) any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands, or
>     (iii) the trust obligations of the United States to Indians.
>
>     (C) If the Secretary does not approve or disapprove a compact

---

[2] There is a dispute among federal courts about when a State crosses the line between prohibiting Class III gaming and regulating Class III gaming. See Northern Arapaho Tribe v. Wyoming, 389 F.3d 1308, 1311(10th Cir. 2004). Under what has been termed the "categorical" approach, a State opens itself up to all types of Class III Tribal gaming if it permits any kind of Class III game to be conducted; the theory being that at that point the State is regulating (as opposed to prohibiting) Class III gaming, which it does not have jurisdiction to do. Id. Under what has been termed the "game specific" approach, a State can allow specific kinds of Class III gaming and opens itself up to Tribal gaming only for the specific game; the theory being that the games not allowed are still prohibited by the State. Id. Given PPI's failure to join the Seminole Tribe of Florida to this suit and the lack of reviewability under the Administrative Procedure Act on PPI's claim, this issue is not appropriately before the Court to decide.

CASE NO.: 4:08cv248-SPM

>described in subparagraph (A) before the date that is 45 days after
>the date on which the compact is submitted to the Secretary for
>approval, the compact shall be considered to have been approved
>by the Secretary, but only to the extent the compact is consistent
>with the provisions of this chapter.

25 U.S.C. § 2710(d)(8). In this case, the tribal-state compact was submitted to the Secretary, but he neither approved nor disapproved the compact. Therefore, by operation of law under 25 U.S.C. 2710(d)(8), the compact was deemed approved by the Secretary to the extent it is consistent with the Act.

## II.    Standard for Issuing Preliminary Injunction

PPI has the burden to demonstrate that it is entitled to a preliminary injunction by showing (1) a substantial likelihood of success on the merits, (2) irreparable injury if the injunction were not granted, (3) that the threatened injury outweighs any harm an injunction may cause the defendants, and (4) that granting the injunction will not be adverse to the public interest. Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1246-47 (11th Cir. 2002).

## III.   Discussion

The federal defendants argue that PPI cannot establish a substantial likelihood of success on the merits because (1) their actions are not subject to review under the Administrative Procedure Act, and (2) the Seminole Tribe is an

indispensable party.[3] The federal defendants also argue that PPI has not demonstrated irreparable injury and that an injunction would not serve the public interest.

Governor Crist argues that PPI cannot demonstrate a substantial likelihood of success on the merits because the Seminole Tribe is an indispensable party.[4] Governor Crist also argues that PPI has not demonstrated irreparable injury and that an injunction would not serve the public interest.

### A. The Seminole Tribe is an indispensable party

The compact between the Seminole Tribe and the State of Florida is a contract. Texas v. New Mexico, 482 U.S. 124, 129 (1987). When a lawsuit seeks to invalidate a contract, the general rule is that all parties to the contract must be joined. Tucker v. Nat'l Linen Serv. Corp., 200 F.2d 858, 863 (5th Cir.

---

[3] The federal defendants also argue that the State of Florida, as opposed to Governor Crist in his official capacity, is an indispensable party to this suit. In response, PPI argues that the State of Florida is not an indispensable party because Governor Crist can adequately represent the interests of the State of Florida regarding the compact. PPI's position is questionable given the Florida Supreme Court's decision on July 3, 2008, that Governor Crist lacked authority to enter into the compact with the Seminole Tribe. Florida Supreme Court Case Docket SC07-2154. The Court will make no ruling on the issue because the preliminary injunction can be denied on other grounds.

[4] Governor Crist also argues that the provisions of the compact allowing the Seminole Tribe to conduct banked card games are consistent with the Indian Gaming Regulatory Act. It is not necessary for the Court to address this issue in denying PPI's motion for preliminary injunction. There are, moreover, preliminary issues of PPI's standing on its § 1983 claim, which should be addressed first. See supra note 1.

CASE NO.: 4:08cv248-SPM

1953) ("[W]here cancellation, reformation, or other equitable relief in respect of a contract or other instrument evidencing a right or claim is sought, all of those having or asserting an interest in the contract or instrument, or who will be affected by the decree, are indispensable parties and must be before the Court.").[5]

Rule 19(a) of the Federal Rules of Civil Procedure requires joinder of a party when (1) complete relief cannot be afforded in the absence of that party, or (2) the party has an interest in the action which disposition may in the party's absence impede its ability to protect its interest or leave it subject to multiple or inconsistent obligations. Fed. R. Civ. P. 19(a). A party who should be joined in a case under the Rule 19(a) standard is known as a "necessary party." Laker Airways, Inc. v. British Airways, PLC, 182 F.3d 843, 847 (11th Cir. 1999). The Seminole Tribe is a necessary party to this action because it has an interest in the compact and it is conducting gaming activities that PPI seeks to invalidate.

PPI cannot join the Seminole Tribe to this action because the Tribe has sovereign immunity. Kiowa Tribe of Okla. v. Mfg. Technologies, Inc., 523 U.S. 751 (1998); Florida v. Seminole Tribe of Fla., 181 F.3d 1237, 1241-46 (11th Cir. 1999). Under Rule 19(b), dismissal of the action is appropriate if the Seminole Tribe is "indispensable." In determining whether a party is indispensable, a court

---

[5] This decision from the Fifth Circuit is binding within the Eleventh Circuit. Bonner v. Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981).

must consider whether the action can proceed without the party "in equity and good conscience." Fed. R. Civ. P. 19(b). In making the determination, the Court should consider (1) prejudice to the absent party, (2) the extent the prejudice can be minimized by shaping the judgment to protect the absent party's interests, (3) whether the judgment will be adequate, and (4) the existence of alternate remedies for the plaintiff if the action is dismissed. Fed. R. Civ. P. 19(b).

In this case, PPI does not argue that the Seminole Tribe lacks an interest that will be affected by this litigation sufficient to satisfy the Rule 19(a) requirements for a necessary party. PPI argues, however, that the Seminole Tribe's interests are adequately represented by the federal defendants and therefore the Seminole Tribe would suffer minimal prejudice if this action proceeded without it. There is some support for the proposition that the federal defendants and the Seminole Tribe share an identity of interest because the federal government stands in a fiduciary position to protect the interests of Indian Tribes. 25 U.S.C. § 2710(d)(8)(B); Wichita and Affiliated Tribes of Ok. v. Hodel, 788 F.2d 765, 774-75 (D.C. Cir. 1986).

Identity of interest, however, is not solely determinative in the Eleventh Circuit of whether a party is indispensable. American Safety Cas. Ins. Co. v. Condor Associates, Ltd., 129 Fed. Appx. 540, 542 (11th Cir. Apr. 11, 2005). The focus instead is on the prejudice that would be suffered by the Seminole Tribe by a judgment declaring the compact invalid. Id.; Ranger Ins. Co. v. United Hous. of

N.M., Inc., 488 F.2d 682, 683 (5th Cir. 1974).  As a practical matter, such a judgment would impair or impede the Seminole Tribe's ability to protect its independent interest in the compact, even if the judgment is not legally binding on the Tribe.  Doty v. St. Mary Parish Land Co., 598 F.2d 885, 887 (5th Cir. 1979).  There remains, moreover, the Seminole Tribe's interest "in its sovereign right not to have its legal duties judicially determined without consent." Enterprise Mgmt. Consultants, Inc. v. United States ex rel, Hodel, 883 F.2d 890, 894 (10th Cir. 1989).  This interest cannot be protected by the United States.  Id.

Under the Rule 19(b) test, the Seminole Tribe is an indispensable party to this litigation.  The Seminole Tribe has an interest in the compact that would be prejudiced if PPI obtains a declaratory judgment invalidating parts of the compact.  A declaratory judgment could not be tailored to reduce the harm to the Seminole Tribe's interests and at the same time afford meaningful relief to PPI.  Although there is no alternative forum for PPI to litigate its claim, in equity and good conscience this case cannot proceed without the Seminole Tribe.  Accordingly, PPI cannot demonstrate a substantial likelihood of success in this case, and its motion for preliminary injunction must be denied.

### B.    No review under the APA

Under the Administrative Procedure Act (APA), a court can set aside final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(a).  PPI argues that when

presented with the tribal-state compact between Florida and the Seminole Tribe, the federal defendants should have disapproved the compact under 25 U.S.C. § 2710(d)(8)(B)(i) because the compact is not in accordance with the law. The compact allows the Seminole Tribe to conduct banked card games that are not allowed under Florida law[6], which, PPI argues, under 25 U.S.C. § 2710(d)(1) of the Indian Gaming Regulatory Act should be prohibited by federal law as well.

Instead of disapproving the compact, the federal defendants took no action and thus, according to PPI, made the unlawful compact effective. PPI argues that there is no material difference between affirmative approval of a compact under 25 U.S.C. § 2710(d)(8)(A) and allowing the compact to take effect by taking no action under 25 U.S.C. § 2710(d)(8)(C). In either case, PPI argues, the decision to approve a compact is reviewable under the APA.

Although no provision of the Indian Gaming Regulatory Act provides for review under the APA of the Secretary's decision to approve, disapprove, or take no action on a compact, review under the APA is not necessarily precluded. "A separate indication of congressional intent to make agency action reviewable under the APA is not necessary; instead, the rule is that the cause of action for

---

[6] Florida Statutes, Section 849.086, makes it a crime in Florida to conduct a banked card game, which is defined as "a game in which the house is a participant in the game, taking on players, paying winners, and collecting from losers or in which the cardroom establishes a bank against which participants play." § 849.086(2)(b), Fla. Stat.

review of such action is available absent some clear and convincing evidence of legislative intention to preclude review." Japan Whaling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 230 n.4 (1986).  Still, the party seeking review must arguably fall within the "zone of interest" to be protected by Congressional act, and the focus remains on whether Congress intended for review.  Clark v. Sec. Indus. Ass'n, 479 U.S. 338, 395-400 (1987).

With respect to the federal defendants' decision to take no action on the compact between the Seminole Tribe and the State of Florida, the Indian Gaming Regulatory Act provides clear and convincing evidence that Congress intended to preclude judicial review.  The Act expressly provides, under 25 U.S.C. § 2710(d)(8)(C), for a compact to be deemed approved if the Secretary fails to approve or disapprove the compact within 45 days.  Thereafter, in accordance with 25 U.S.C. § 2710(d)(8)(D), the Secretary is required to publish the compact in the Federal Register.  The Secretary may not hold off deemed approval or publication of the compact if he is uncertain about whether the compact complies with applicable laws.  The Act, moreover, provides "no standards by which to judge whether the Secretary acted arbitrarily and capriciously by not acting . . . [because] the statute says noting about what [he] is to consider in making [his] decision." Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton, 327 F.Supp.2d 995, 999 (W.D. Wis. 2004).

With the 45-day deemed approval deadline followed by mandatory

publication, Congress left no room for any court-ordered remand for further consideration of a compact by the Secretary.  Id.  The possibility of rewinding this process through APA review and sending the compact back to the Secretary for further consideration is inimical to the clearly expressed intent by Congress that the compact be deemed approved after 45 days.  Id.

Although PPI complains that the compact should not be allowed to stand because it contains illegal provisions, Congress provided a remedy apart from judicial review to address the situation.  Specifically, a compact that the Secretary does not approve or disapprove within the 45-day period is deemed approved "only to the extent the compact is consistent with the [Indian Gaming Regulatory Act]."  25 U.S.C. § 2710(d)(8)(C).  Therefore, any provisions of the compact that are contrary to the Indian Gaming Regulatory Act are not in effect and can subject the Seminole Tribe to federal criminal prosecution (18 U.S.C. § 1166) and fines issued by the National Indian Gaming Commission (25 U.S.C. § 2713).

Under this remedy, it would not be appropriate for a court to issue a declaratory judgment stating that the Seminole Tribe is conducting gaming activities that are not consistent with federal law.  The Eleventh Circuit Court of Appeals has recognized the "detrimental impact on the criminal remedial scheme which the [Indian Gaming Regulatory Act] contemplates" that such a judgment would have.  Florida v. Seminole Tribe of Florida, 181 F.3d 1237, 1249 (1999).

> First, the [tribal] official would be deprived of his congressionally recognized right to invoke the safeguards of criminal procedure when his gaming activities are challenged in court.  Second, the discretion of the United States not to prosecute the official would be severely restricted in light of the court's recognition that improper gaming had occurred.  It is consequences such as these that underpin the traditional rule that equity will not enjoin the commission of a crime.

Id.

The express terms and structure of the Indian Gaming Regulatory Act provide clear and convincing evidence of Congressional intent to preclude APA review as sought by PPI.  Specifically, Congress has mandated that a compact be deemed approved within 45 days, and published in the Federal Register.  25 U.S.C. § 2710(d)(8)(C) and (D).  Congress included protections against illegal gaming through federal criminal prosecution and fines.  In light of these provisions, declaratory judgment and injunctive relief concerning the legality of the Seminole Tribe's gaming activities is improper.  Accordingly, PPI's request for a preliminary injunction will be denied.

### C. No irreparable injury if injunction were not granted

PPI claims that it will suffer irreparable injury if it is not granted injunctive relief.  The Court will assume for the sake of argument that PPI will suffer irreparable injury through the loss of customers and good will.  Ferrero v. Associated Materials, Inc., 923 F.2d 1441, 1448 (11th Cir. 1991) ("[L]oss of customers and goodwill is an 'irreparable' injury.").  The problem, however, is that

the injunction PPI seeks cannot prevent its injury.

The specific relief sought by PPI against the federal defendants and Governor Crist is to bar them "from implementing or enforcing the Compact's illegal provisions." Doc. 4 at p. 3, ¶ 8, and Prayer for Relief at p.5. The Secretary has no role under the Indian Gaming Regulatory Act to implement or enforce the compact. He has no undischarged duties under the Act since the compact has already been deemed approved and published. Governor Crist's only remaining duty under the compact is to monitor the Seminole Tribe's compliance. Enjoining Governor Crist does not prevent the Seminole Tribe from continuing its gaming activities and thus would not prevent PPI's loss of customers and goodwill.

The only effective remedy to prevent PPI's injury is an injunction prohibiting the Seminole Tribe's Class III gaming activities. PPI has not sought such an injunction. Nor is it likely that PPI could obtain such an injunction because the Seminole Tribe is a sovereign entity that is entitled to immunity and because such an injunction would interfere with the criminal-remedial scheme that Congress provided through the Indian Gaming Regulatory Act. <u>Florida v. Seminole Tribe of Florida</u>, 181 F.3d at 1237 (1999). Thus, even if PPI can demonstrate irreparable injury, it has not shown that the requested injunction can prevent the injury. Accordingly, PPI's motion for a preliminary injunction must be denied.

CASE NO.: 4:08cv248-SPM

### D. Granting the injunction is adverse to the public interest

Granting PPI's injunction is adverse to the public interest as determined by Congress and expressed through the Indian Gaming Regulatory Act. The provisions of the Act reflect a "carefully-struck congressional balance of federal, state, and tribal interests and objectives . . . ." Id. at 1248. While the Act is intended to promote the Seminole Tribe's interest in "economic development, self-sufficiency, and strong tribal government[]" 25 U.S.C. § 2702(1), PPI cannot join the Seminole Tribe to this suit. Moreover, the criminal remedial scheme of the Act is inconsistent with granting APA review and declaratory or injunctive relief. Finally, the form of injunction that PPI seeks provides no effective remedy to PPI, and would impose confusing obligations on the federal defendants and Governor Crist. Based on the foregoing, it is

ORDERED AND ADJUDGED that PPI's motion for preliminary injunction (doc. 4) is denied.

DONE AND ORDERED this 8th day of July, 2008.

_s/ Stephan P. Mickle_
Stephan P. Mickle
United States District Judge

CASE NO.: 4:08cv248-SPM